Call the next case, Walgreens v. Workers' Compensation Commission, 5100394. Counsel, please. Good morning. May it please the Court, my name is Alexis Maimonas. I am here on behalf of the appellant, Walgreens, in this matter. This is a manifest weight of the evidence issue. The question surrounds whether the petitioner sustained an accident on February 9, 2007 while she was at work. The arbitrator found that an accident was sustained. The commission reversed, relying heavily on the primary physician's medical records versus the petitioner's credibility. The commission decision was appealed to the circuit court. The circuit court reversed and found that an accident did, in fact, occur. Walgreens has appealed. That is why we are here. And it is our position that the circuit court erroneously substituted its judgment for that of the commission. As you are well aware, it is the... The circuit court erroneously... It is the commission's role to determine facts and draw reasonable inferences from the evidence presented. And it is the reviewing court's role to determine whether that decision is against the manifest weight of the evidence. In order for a decision to be found against the manifest weight of the evidence, an opposite conclusion must be clearly apparent. Meaning, if there is no reasonable basis for the commission's decision, then courts have reversed based on the manifest weight. Let's back up. Are you here on behalf of the claimant? I am here on behalf of the respondent, the employer, Walgreens. And it is our position that the commission was correct in finding that no accident occurred on February 9, 2007 based on the medical records from the petitioner's primary physician, Dr. Huffstutler, who is the petitioner's primary care physician. The petitioner presented to Dr. Huffstutler approximately a week after her alleged injury occurred. At that time, she did not mention any work injury concerning her left shoulder. She did talk about work. She talked about the fact that she was going to be retiring on the 28th of February and that she had a few weeks off to help recover from her personal health issues. That medical record from February 15th notes that she was experiencing some pain in her upper extremities, the thoracic area, which Dr. Huffstutler attributed to a vitamin D problem. He also noted chronic arthritis. Approximately two, three weeks later, on March 7th of 2007, the petitioner called Dr. Huffstutler's office and said that she forgot to tell him that she had a work injury on February 9th of 2007 to her left shoulder and that she could not return to work. She wanted to be taken off of work. So she made an appointment to come see him. And that was the first time that Dr. Huffstutler was informed of the injury. Let's break that down a little bit. There was testimony that the arbitrator found on the petitioner's side of three physicians linking the work accident to her condition of well-being. That's correct. Then you have Huffstutler. Does he not state in his records of March 7th, do state she apparently had a work camp injury, 1907. He also said that she was going to some therapy, but it was not very effective. Also, a handwritten note due to March 7th, 2007, indicates that Clayman told Huffstutler that she had been injured at work on February 9th, 2007. Right. So you're saying there's no history, consistent history here of a work injury that she reported the day it happened. Is it in the records to a supervisor? So how does Huffstutler's records override the opinions of everybody else? Right. I have multiple responses to that. First of all, I think the commission focused in on the fact that if she had truly sustained an injury on February 9th, she would have reported it a week later. She wouldn't have waited a month to report it to her primary care physician. This is a physician that she saw. But she reported that. Is there any dispute she reported that day to a supervisor? Yes, there is a dispute that she reported on February 9th. On direct examination, she testified that she reported it on February 9th. On cross-examination, she said that it was possible she reported it on February 8th. There's indication in the medical records from Dr. Onn and the admitting record that it was an accident that occurred on February 7th. There's also the testimony of the HR representative from Walgreens. Her testimony indicated that the accident was reported sometime in February, but she never said exactly what day it was reported. So how does that rebut the claimants? She doesn't know exactly when it was reported, but yet acknowledges it was reported. Well, I think it goes to her credibility. If everything in the evidence showed that February 9th was the day that she was injured, the day that she reported her injury, her credibility wouldn't be drawn into question the way it is with the fact that she's saying she can't remember. She's telling one doctor that the injury occurred on one day. She's saying that she reported it another. There's no consistency. And the commission, when it reversed the arbitrator's finding, it said that the petitioner reported it on March 5th. Now, I know that there's some question on how the commission came to the conclusion that it was actually reported on March 5th, but if you look at the record as a whole and you look at the HR representative's testimony, she testified that the petitioner, if she worked one calendar day of a new year, she was entitled to 25 days off. Those 25 days consisted of vacation, personal, sick days. She worked the one day in January, so she was entitled to 25 days off. By March 2nd, which was a Friday, she had used up all of her 25 days. March 3rd was a Saturday, 4th was a Sunday, 5th was a Monday. She testified, or it's in the records, I know Dr. Huffstetter's records, she told Dr. Huffstetter that she returned to work on March 5th, Monday. She tried, but she couldn't do it, and that's when she took herself off of work. That's when she called two days later and told Dr. Huffstetter that she sustained a work injury back on February 9th of 2007. The position is she never sustained any, she never reported to anybody, and never had any incident at work? No, no. She did report something. There was no incident report, accident report, admitted into evidence. She didn't testify specifically as to what she had reported. She did call to the, she did call into HR and say she needed sick time, but Dr. Huffstetter's records will show that she was treating for a significant period of time for a lot of ailments that had nothing to do with work. What was actually said and reported to HR, it's not in the record. Can I ask you a question? Sure. What did Dr. Lehman say? Dr. Lehman examined the petitioner's shoulder and found that she suffered from a degenerative condition. It was a natural progression of a degenerative condition. He testified he didn't believe her work activities contributed to her left shoulder problem? Yes, I believe he did. What did Dr. Shabbat say? He looked at her cervical spine and opined that her condition was a result of a natural degenerative condition. She had also... In my opinion, the patient's work duties are not the prevailing reason for her present symptoms. That's correct. So why couldn't the commission just rely on those two opinions and indicate that she failed to prove that she sustained a work-related accident? They could have. Isn't that the end of the argument? Well, let me ask you this, as long as we're going to debate that. Shabbat's opinion is qualified, is it not? If he says it's not the primary reason, would that be sufficient to deny compensation? Does it have to be the primary reason? Arguably. Anything that causes, accelerates, or exacerbates a condition can be found. It doesn't have to be the cause of it, does it? That's correct. But Lehman's isn't qualified, is it? So we've got three opinions for the claimant, we've got Lehman's for the respondent, and we've got to qualify for Shabbo. Yes. Who decides the question of fact? The commission decides the question of fact. So if we had 90% of the evidence in favor of the claimant, 10% in favor of the respondent, the respondent should win, right? Because there's some or any evidence. That's correct. Okay. Thank you. Counsel, please. Thank you, Your Honor. May it please the Court, Counsel, my name is Josh Humbrecht and we represent Petitioner Bonnie J. Miller. The sole question before this Court is whether there is sufficient evidence in the record to uphold the decision of the commission that there was no accidental injury. We submit there is not. What about Lehman? We have a qualified opinion, we have three on the other side, we have Lehman. How does Lehman not control it? Your Honor, when you asked the question a minute ago, the commission's finding didn't rest on causation and it wasn't addressed at all in the decision of the commission. In regards to Lehman's testimony, it's still, Lehman's IME dealt solely with her shoulder. Okay, and this is, the treatment is basically taken, cervical radiculopathy was the second diagnosis to what it initially was, shoulder impingement. Okay. With that being said, Dr. Lehman's opinion was addressed in the arbitrator's decision. I know that's not what is deferred to, I guess, in that sense. But it does address, Dr. Lehman states that Petitioner suffered from this chronic condition in her shoulders for over the past five, six years. We have Dr. Huff's records from 1999, they're part of the record, all the way until the injury. It doesn't exist, those complaints don't exist. And in fact, when respondents briefed this, they went backwards to point out all the aches and complaints that Petitioner made over the past five, six years prior to the working. It's her hips, it's her legs, we never get to the upper torso or the upper body. There's nothing in the medical records that would support Lehman's opinion. No, and the arbitrator goes out of his way and in fact writes a lengthy paragraph about just that. And then the commission fails to address causation altogether. Commission causation, they said she failed to prove that she sustained an accident. And that's what Lehman says. This wasn't caused by any work activity that contributed to her left shoulder problem or a need for arthroscopy. In reading the commission's decision, I tend to read it more as they found that she didn't sustain accidental injuries on the 9th, not solely or not related to the question of causation. But even if she doesn't, she didn't sustain an accidental injury on February 9th. Was there a causation relationship to what? But it doesn't stop there with just Lehman's arm because it became, it was cervical radiculopathy which was attributed to cause of shoulder complaints. And Dr. Taylor, who opined regarding causation on the cervical condition, causally related it. And again, Dr. Chabot. So? Well, it's not just a shoulder injury. I guess would be my response to you that this was a cervical condition that was causing pain in her shoulder. Impingement syndrome was also documented. But the 19B specifically, which is what this case derives from, was for approval for surgery recommended by both Dr. Taylor and Dr. Paletta who was a treating petitioner for a shoulder condition. So it wasn't, I guess the shoulder and the neck overlap is what I'm getting at. And simply by Dr. Lehman stating his opinion, it doesn't negate the cervical question as well. And again, there's... Lehman said nothing about her cervical problem. No. He was specifically addressing her shoulder. You only addressed shoulder. Yes. So you got the cervical, you got opinion by three doctors on cervical. Dr. Taylor gave the cervical opinion. And Lehman doesn't really contradict it. No, he doesn't. He doesn't even address what you're saying. It was the shoulder only that Dr. Lehman was testifying regarding, or his IME was about. So is it fair to say there's no conflicting medical testimony on the cervical? Well, Dr. Chabot's opinion qualifies it. He doesn't rule it out, does he? No. And he also, I mean, with that being said, he too says that Petitioner has this chronic condition over the past years related to her cervical. Again, you have the records from 1999 to the day of the injury. It doesn't exist in there. Petitioner did have a cervical fusion, and she testified of that in 1993. But then you start going through her medical records, which respond to submitted, and it's not there. There's no complaints when she started with Walgreens. There's no complaints. She lost work at Walgreens? How long did she work at Walgreens? I don't know. Never complained about any problems all those years? No. I mean, you have, unless you saw an outside doctor beyond Dr. Huffstetter, but the only evidence in the record is Dr. Huffstetter. But there's no medical records saying there were any complaints in those intervening years? No. She talks about her hips, and maybe her lower back, I think, gets discussed. Nothing about the neck and the cervical? No. And this discussion, regarding the days off that she took, from January into February, prior to this date of the injury, if you actually look at Dr. Huffstetter's records in January, before the date of the injury when she took all this vacation sick time, there's a clear note in there about how she was suffering from this acute, severe bronchitis that she had going on. But it's being suggested, slightly or slyly, that Petitioner milked all her vacation days and sick days, so that if she has a work accident or claims to have a work accident, they have more free days off. But then when you actually go into the records and look at them, she's complaining to her doctor a month before this injury that she's physically ill, and that's why she's taking days off of work. And there's a reference in the record, too, that her father was sick. She was caring for her father. The other thing is Lucy Briggs, the HR specialist, she didn't abuse her days. What do you make of Counsel's argument? There seems to be some dispute over when she reported the accident. Is the respondent contesting that she reported it? She seems to be saying that the evidence doesn't support the claimant's state of accident. And I don't take that as being contradictory. They don't seem to be able to determine looking back when she reported it. What do you make of that? More of a red herring. Petitioner testified to the day of the injury. Lucy Brooks answered a very clear question. And I pulled the question. And you were aware that Ms. Miller reported an accident or an incident that occurred on either February 7th or 8th, it looks like, while she was split case picking. Is that correct? Answer, yes. And you're familiar with the incident reports that were filled out as a result of that report. Yes. Did Ms. Miller miss any time from work following reporting of the injury? Yes. That would have been the period of time that she missed several days, whether I believe it was vacation and personal days in February. Long story short, HR specialist confirms that prior to leaving on February 15th for these two weeks of the injury, it had already been reported. Which then kind of takes away this whole idea that petitioner made no contemporaries report. And the idea that she saw Dr. Hufstetter on the 15th and didn't report it was already reported to work by that time. That didn't happen on vacation. And yet we know it was reported clearly before vacation. The record fully supports that conclusion. Did Dr. Layman help her? In what regard? As to why, whether she had any injury or work-related. No, Dr. Layman was just an IME and again, he said that basically the shoulder condition, the shoulder symptoms she was experiencing weren't causally connected to work. Why, if he says that in his purview, how do you say they're wrong? Well, it doesn't just stop with Dr. Layman. It goes on with Dr. Taylor and Dr. Chabot in regards to the cervical condition. And Dr. Hufstetter? Well, he's a primary care doctor. I mean, I would argue that it's kind of outside his purview. But he does know, Dr. Hufstetter, that the job she does, she's on a factory line for eight to 10 hours a day filling boxes, moving boxes, day in, day out. I mean, Dr. Hufstetter doesn't give an opinion. Was that caused by? No, absolutely not. He doesn't even get into that, does he? No, what he does say is, and I think it's the March 7th record, he does say, her job causes a lot of wear and tear on her body. And then I think he says, I'll see her down the road for her acute work injury, is the exact quote. So there's something along the lines of, Dr. Paletta, as do Dr. Taylor, believe that this is a work-related condition. And it was, I guess, during a conversation he was having with Petitioner about this all being contested at that point. But he goes in and he states something very akin or along those lines. Overwhelmingly, the evidence supports that Petitioner sustained a work injury. The commission finding that Petitioner sustained a work injury affects those prior conclusions or affects the overall conclusion because it's his whole idea. The commission concluded it was not reported until March 5th? Yes. Did the HR supervisor acknowledge that it was reported before then? Yes. And it was never testified or it was never brought out in the commission's decision or opinion, in Lucy Brooks' testimony. It was never submitted before or discussed, I should say, in the commission's decision. I don't want to say it was overlooked, but either it was overlooked or it was arbitrarily rejected because there's no reason to doubt Lucy Brooks' testimony. She testifies at length about her knowledge of Petitioner's work comp claim, her plans to possibly retire, other things about Petitioner. She had a strong foundation and there's just no reason to reject the testimony of Lucy Brooks. But the other finding that the commission made was that Petitioner was not as credible as Dr. Huffstutler's records. Well, I think that goes in line with the commission finding she didn't report her injury until 3-5-2007 and it cast this kind of shadow of impropriety on Petitioner regarding the days she took off and it's not supported by the record. And those two erroneous conclusions led the commission to make the decision it did, which ultimately is against the manifest way to the evidence. The panel has no more questions. Thank you, Cal. Thank you. Just to touch on what counsel just said regarding the testimony of Ms. Brooks, it seems that the commission either arbitrarily looked over what Ms. Brooks said. It seems like that? Doesn't it really appear that they did? It appears. And the point that I want to bring up, though, is that it seems that the main reason the commission reversed the arbitrator's decision on February 15th when the petitioner went to Dr. Huffstutler. They put that in the crux of their opinion. They say Dr. Huffstutler's record clearly indicates he saw the petitioner on February 15th. They quote the record and highlight the fact that she discussed her upcoming retirement but that she never mentioned that she was treating for bronchitis at that time. So she went there but not because of a work injury. And if you look at his records, he has a very nicely laid out subjective history portion in all of his records  what the conversations are about. You would think that if she had sustained an injury, that's the type of exchange that a patient would have with their doctor. She's on vacation on the 15th of February? She's off of work. She testified clearly she had a work-related injury on February 8th or 9th, correct? Yes. He cites her human resource manager who acknowledged that she reported a work-related injury on February 8th. Was he not quoting the transcript accurately? That was not my interpretation. My interpretation was that she knew of the injury because she had several discussions with her while she was taking time off of work because she had to call the HR representative for the sick days and for the leave of absence. There's nothing in the record saying what exactly she said she was being taken off of work for. But again, I think the main reason the commission found that the petitioner did not sustain an accident was because of that medical record. So even if she reports it to the supervisor, even if the supervisor acknowledges she reports it, a doctor's report later overrides that testimony. Well, wouldn't the company know if she reported more than the doctor would know? I don't know about that because if she went to the doctor, she would tell the doctor what was wrong. If she had an injury, she would have told the doctor about it. Well, that ties into you saying seemingly the commission arbitrarily determined the date of injury was later. It doesn't seem like seemingly. I mean, if your supervisor acknowledged there was this discussion before the vacation, how do we determine that there was no injury reported? Well, the issue of proper notice isn't an issue because regardless, it was given within 45 days. It was reported at some time. The commission reversed the arbitrator's decision because of credibility issues. There are multiple credibility issues found throughout the record, and as you know, in order for the decision to be found against the manifest weight of the evidence,  a substantial reason for that. And there's enough evidence here to support that the commission's decision was not against the manifest weight of the evidence, and therefore it's the respondent's. Final quick question. Sure. Who says that Layman, that seems to be the one area that would support the commission's decision, never addressed the cervical part? So what good is Layman's opinion if it doesn't address the cervical part? We have a second independent medical examiner, Dr. Shabbat, C-H-A-B-O-T. Who gives a shot at the primary. Does Layman address the cervical? No, he does not. Okay. So there's no contrary medical evidence on the cervical, and the   I guess not. Okay. Thank you, counsel. The clerk will take the matter under advisement from Dr. Shabbat. Thank you. Thank you.  Thank you. Thank you.